FILED
IN CLERKS OFFICE
U.S. ···· COURT ED N.Y:
★ MAY 16 2005 ★
P.M. ——
TIME A.M. ——

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JULIA E. HAYES, on behalf of herself and all others
similarly situated,

                         Plaintiff,

     -against-

AMERICAN AIRLINES, INC.,

                        Defendants.
-----------------------------------------------------------------X

**Report and Recommendation**

04-CV-3231 (CBA)(JMA)

APPEARANCES:

Robert I. Harwood, Esq.
Samuel K. Rosen, Esq.
488 Madison Avenue
New York, New York 10022

Richard M. Goldstein, Esq.
Matthew J. Morris, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036-8299

**AZRACK, United States Magistrate Judge:**

     By order dated November 22, 2004, a motion to remand in the above captioned case was

referred to me by the Honorable Carol B. Amon, United States District Judge. For the reasons

stated herein, I recommend that plaintiff's motion to remand be denied. Defendant has satisfied

the federal question doctrine. The issue at hand does "necessarily turn" upon the construction of

the relevant federal statutes and thus there is a substantial federal interest at stake. Additionally,

defendant satisfies Section 28 U.S.C. 1442(a)(1)'s three-prong test: (1) defendant is a person

under this Section; (2) defendant did "act under color of law" and there is a "sufficient causal

connection between the charged conduct and asserted official authority." and; (3) defendant successfully raises the colorable federal defense of preemption. Finally, plaintiff is denied her request for costs and fees.

## I.    **Factual Background**

Plaintiff brings this action on behalf of a class comprised of people who purchased airline tickets from defendant American Airlines ("AA"). Like the class, plaintiff purchased a ticket that was not used and expired, but never received a refund of the Surcharges. Defendant provides air passenger service throughout the United States. While providing these services to passengers, defendant is required to collect a Passenger Facility Charge (PFC) and a Security Service Fee (SSF) (collectively referred to as "Surcharges"). These Surcharges are added to the ticket purchase price and collected at the time of the ticket purchase.

Airlines are required and authorized to collect these PFC's under 49 U.S.C. § 40117 and regulations enacted by the Department of Transportation ("DOT"). The DOT authorizes the state governments or their agencies to use these PFC revenues to fund "eligible airport-related projects", such as improvement of airport infrastructure. See Def. Mem. of Law, at 3; see also 49 U.S.C. § 40117 (a)(3). The statute and regulations also set forth criteria and approval guidelines for any such projects. (Def. Mem. of Law, at 3). Also, the statute and regulations permit state governments to authorize a charge between one dollar ($1) and four dollars and fifty cents ($4.50) when a passenger boards at an airport. See Def. Mem. of Law, at 3; 49 U.S.C. § 40117(b)-(e); 14 C.F.R. § 158.5, 158.15-17. When the DOT is notified about the approved project, then the airlines become obligated to collect the PFC's on behalf of the relevant public agency at the time the ticket is issued to the airline's passengers. See §§ 14 C.F.R. 158.45,

2

158.47.

"Airlines hold PFC revenues in trust 'for the beneficial interest of the eligible agency imposing the fee' and hold 'neither legal nor equitable interest in the passenger facility revenues.' 49 U.S.C. § 40117(g)(4), which they must remit 'to the public agency on a monthly basis.' 14 C.F.R. § 158.51." (Def. Mem. of Law, at 3). The regulations also provide that passenger initiated flight itinerary changes that require a price adjustment in the purchase price are subject to a collection or refund of the PFC as appropriate. 14 C.F.R. § 158.45(a)(3). The regulations are unclear though as to what happens to the PFC's when a ticket expires unused; an event "that may occur after the scheduled flight and after the airline's transfer of the PFC revenues to the public agency." (Def. Mem. of Law, at 4).

SSFs are collected pursuant to a post September 11th government direction which authorizes the Under Secretary of Transportation for Security to collect the SSFs to be used for various enumerated "costs of providing civil aviation security services." See Def. Mem. of Law, at 4; see also 49 U.S.C. 4490(a)(1). The SSF fee of two dollars and fifty cents ($2.50) per enplanement is collected by the airline carrier that sells the ticket and is then remitted to the government by that carrier on the last day of the calendar month following collection. See Def. Mem. of Law, at 4; 49 U.S.C. § 44940(e)(1), (2); 49 C.F.R. §§ 1510.9, 1510.13. The SSF governing regulations were promulgated by the Transportation Security Administration ("TSA") of the Department of Homeland Security. (Def. Mem. of Law, at 4). Similar to the PFCs, the SSFs are held in trust for the "beneficial interest of the United States" the carrier "holds neither legal nor equitable interest in the security service fee." See Def. Mem. of Law, at 4-5; 49 C.F.R. § 1510.11(b). The Under Secretary of Transportation of Security then holds the authority to

3

refund any amounts collected by mistake or in excess of the requirements. See Def. Mem. of Law, at 5; 49 U.S.C. § 44940(g). The TSA regulations do provide that the SSFs are subject to additional collection or refund by the airlines when a passenger changes the itinerary to alter the number of enplanements. See Def. Mem. of Law, at 5; 49 C.F.R. § 1510.9(b). However, similar to the PFCs, neither the statute or regulations address the availability of refunds when an unused ticket expires. (Def. Mem. of Law, at 5).

## II.    **Procedural Background**

The instant action against AA was filed in the Supreme Court of New York, Queens County on or after July 2, 2004. The Complaint styled Julie E. Hayes ("plaintiff") on behalf of herself and all other similarly situated.[1] Plaintiff alleges that this class consists of thousands of people who are dispersed throughout the United States. (Def. Mem. of Law, at 5). The Complaint alleges that AA failed to make the requisite refund of PFCs and SSFs to passengers whose unused tickets on its flights had expired. (Def. Mem. of Law, at 5). Plaintiff alleges that she purchased a ticket that was not used and expired, but never received a refund of the Surcharges. However, plaintiff did not allege in the Complaint whether she ever requested a refund of the fees from American. See Def. Mem. of Law, at 5; see also Complaint ¶ 6. Plaintiff alleges three causes of action: (1) violation of New York's General Business Law § 349; (2) for

---

[1]  In the Complaint, plaintiff represents a class consisting of,

> all persons who, during the period commencing six years prior to the filing of this [C]omplaint and continuing to the present, purchased a ticket to fly on an AA flight and paid to AA a PFC and/or a PSSF and, after the ticket was not used for a flight within the allocated time period and expired, AA failed to refund the PFC and/or PSSF.

Complaint ¶ 8.

4

unjust enrichment and; (3) for breach of contract. Plaintiff seeks declaratory and injunctive relief as well as compensatory damages and attorneys' fees. See Def. Mem. of Law, at 6; Complaint ¶¶ 25-36.

On July 28, 2004, defendant removed the action to federal court on the grounds that this Court had original jurisdiction. Defendant's basis for removal was that,

> although the claims are couched in terms of state law causes of action – the critical element of each claim consists of a substantial disputed question of federal law, and that the action is against "the United States or any agency thereof or any officer (or any person acting under that office)" for acts "under color of such office." Def. Mem of Law, at 6, citing, 28 U.S.C. §§ 1441(b), 1442(a)(1).

Plaintiff subsequently moved to remand to state court on November 12, 2004. Plaintiff argues that this Court has no original jurisdiction, as neither diversity nor federal question jurisdiction exists, as "plaintiff has not pleaded any federal claims. As a result, defendant's removal was improper." (Pl. Mem. of Law, at 4). Oral Argument on the Motion was heard by this Court on February 4, 2004.

Defendants additionally note that when this action was commenced, AA was defending a similar putative class action in the state court in Oklahoma, while at the same time three other airlines were defending a similar suits in the Federal District Court for the Western District of Oklahoma.[2] (Def. Mem. of Law, at 6). As a result, AA sought and obtained leave from this Court to move to transfer this action to the Western District of Oklahoma. Subsequently, on October 8, 2004, the Western District of Oklahoma remanded the three related actions

---

[2] Defendant notes the federal cases as: *Brown v. Delta Airlines, Inc.*, No. CIV-03-871-L; *Stem v. Continental Airlines, Inc.*, No. CIV-03-943-L; and *Stem v. Northwest Airlines, Inc.*, No. CIV-03-901-L. The state cases are noted as *Coleman v. American Airlines Inc.*, Case No.: CJ-2002-650 (Dist. Ct., Canadian County, Oklahoma). Def. Mem. of Law, at 6.

concluding that it lacked subject matter jurisdiction. (Def. Mem. of Law, at 6-7). Due to the

Oklahoma federal court decision, defendant notified the Court it would not proceed with its

motion to transfer and instead would oppose plaintiff's Motion to Remand. (Def. Mem. of Law,

at 7). Meanwhile, the Oklahoma state court granted AA's motion to dismiss finding "that any

amendment to the amended petition would be futile and that this matter should be addressed to

the Federal Courts." (Def. Mem. of Law, at 7). The Oklahoma state court plaintiffs have

appealed and are awaiting decision. (Def. Mem. of Law, at 7).

## III.    **Discussion**

### A.    **Legal Standard**

1.    Federal Question Jurisdiction

A defendant may remove a civil action from state court to federal court as long as the

federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Original jurisdiction

exists if the asserted cause of action is "founded on a claim or right arising under the

Constitution, treaties or laws of the United States." 28 U.S.C. § 1331. In evaluating whether or

not removal is proper, courts have held that the removal statute must be construed strictly

because of the mandatory language of the removal statute and because of the significant

federalism and judicial efficiency concerns involved in such a determination. See Marco v.

Indep. Health Ass'n, Inc., 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001)(citing Shamrock Oil &

Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); see also In re 17, 325 Liters of Liquor, 918 F.

Supp. 51, 54 (N.D.N.Y. 1996).

In determining whether federal question jurisdiction actually exists, the Court must look

to see whether the well-pleaded complaint establishes "[that either] federal law creates the cause

6

of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." 28 U.S.C.A. § 1331; see also Caterpillar v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed. 2d 318 (1987)( The well pleaded complaint rule "provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint...The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."); see also Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed. 2d 650 (1986) (Merrell Dow holds that the mere existence of a federal question on the face of a well-pleaded complaint is not sufficient to confer subject matter jurisdiction, but the court must inquire further into the "nature of the federal issues at stake" while keeping an eye on "practicality and necessity."). The court must look beyond the face of the claim and determine whether the substance of plaintiff's allegations actually raises a federal question. Id. The proper inquiry is whether the cause of action "implicates a federal interest sufficiently to confer subject matter jurisdiction." D'Alessio v. N.Y. Stock Exch., 258 F.3d 93, 101 (2d Cir. 2001)(affirming denial of remand); see also West 14th Street Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 196 (2d Cir. 1987)(holding and quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 804, 106 S. Ct. 3229, 92 L.Ed. 2d 650 (1986). Additionally the Court looks to the "artful pleading doctrine" in making its determination. D'Alessio describes this doctrine as "prevent[ing] a plaintiff from avoiding removal by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint. 258 F.3d at 100 (quoting Marcus v. AT & T Corp., 138 F.3d 46, 55 (2d Cir. 1998)). Thus, a case that arises under federal law may only be properly

removed if its resolution "necessarily turns" on the construction of federal law. See Pl. Mem. of Law, at 8, citing Franchise Tax Bd., 463 U.S. at 9. Finally, it is the moving party, here the defendant, who bears the burden of demonstrating whether or not removal to federal court is proper. See California Public Employees' Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 100 (2d Cir. 2004); see also Pl. Reply, at 5.

## B.    Federal Question

### 1.    General

Defendant seeks to remove this instant action under 28 U.S.C. § 1441(b). Section 1441(b) permits this Court to adjudicate a matter which lacks diversity jurisdiction upon the sufficient showing of federal question jurisdiction. Id. Defendant argues that removal is proper because the cause of action is founded upon a claim or right arising under federal law, specifically the Airline Deregulation Act ("ADA"). Airline Deregulation Act, 49 U.S.C. § 40101 et seq. Notice of Removal, ¶¶ 7,8. Plaintiff predicates her motion to remand to state court on the belief that her state law causes of action are not completely preempted for jurisdiction purposes. (Pl. Letter to Judge Amon, dated Aug. 5, 2004).

Plaintiff argues that although federal regulations govern and mandate the refund of the Surcharges, this instant action does not seek enforcement of any rights under any of the aforementioned regulations or the ADA. (Pl. Mem. of Law, at 6). Plaintiff further contends that the refund claims are unrelated to the ADA or its governing regulations because plaintiffs "who allow their tickets to expire unused do not use the services which the fees are intended to defray." (Pl. Mem. of Law, at 10-11). Instead, plaintiff asserts that defendant's failure to refund the Surcharges is premised upon a contractual relationship between the two parties and this

8

contractual relationship, together with New York common law and various statutory claims, form the basis of plaintiff's rights.[3] (Pl. Mem. of Law, at 6). Plaintiff argues that although plaintiff's state law rights encompass "clear and unambiguous federal regulations dictating the refund sought, [it] does not transform the nature of the action from state to federal."[4] Id. at 8.

The Supreme Court in Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. at 813, stated, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Additionally, since neither Congress nor the Supreme Court have held that the ADA completely preempts state law, the Court must look beyond the face of the federal law in question "to the nature of the federal interest at stake" and determine whether plaintiff's right to relief necessarily turns on the construction of these federal laws. See Kings Choice Neckwear, Inc. vs. DHL Airways, Inc., et al, 2003 WL 22283814 *3 (S.D.N.Y); see also Donovan v. Rothman, 106 F. Supp 2d 513, 516 (S.D.N.Y. 2000) (quoting West 14th Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 193 (2d Cir. 1987). Here, in order to determine the "nature of the federal interest at stake" and determine whether the case "arises under" federal law for purposes of removal, the Court must look to a plaintiff's right to a

---

[3] Plaintiff argues that this cause of action "asserts rights bourne of state, not federal law, for breach of contract, consumer fraud and unjust enrichment." Pl. Mem. of Law, at 6.

[4] Plaintiff states:

> Thus, even though AA collected the funds pursuant to federal law and federal law requires their refund, this Court lacks jurisdiction because PCFs and PSSFs paid by non-emplaning passengers have shed their formal veneer. As a result, as stated in Mobil Oil Corp., 671 F.2d at 426, the "conclusion that the district court has no jurisdiction of this case comports with the fact that there is no federal interest whatsoever in the resolution of this controversy."

Pl. Mem. of Law, at 8.

Surcharge refund under the relevant statutes, 14 C.F.R. § 158.45(a)(3) and 49 U.S.C. § 44940.

See also Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1,9 (1983) (A case will

be deemed to "arise under" federal law for removal purposes "where the vindication of a right

under state law necessarily turn[s] on some construction of federal law.") The relevant statute,

14 C.F.R. § 158.45(a)(3), states,

> Issuing carriers and their agents shall collect the PFC's based upon the itinerary at the
> time of issuance. Any changes in itinerary that are initiated by a passenger that require an
> adjustment to the amount paid by the passenger are subject to collection or refund of the
> PFC as appropriate.

Id. 49 U.S.C. § 44940(g) states in relevant part, "[t]he Under Secretary may refund any fee paid

by mistake or any amount paid in excess of that required." Additionally, here, plaintiff and

defendant both provide letters of support for their respective theories regarding the applicable

refund regulations from two different TSA administrators: (1) Barry Molar Letter, Manager of

the Airport Financial Assistance Division of the FAA to James A. Hultquist, Managing Director

of the Air Transport Association ("Molar Letter"), dated December 17, 2002; and (2) Randall

Fiertz Letter, Acting Director of Revenue at the Department of Transportation ("Fiertz Letter"),

dated November 21, 2002.

2.    *PFC's and PSSF's*

Plaintiff alleges that Section 158.45(a)(3) requires defendant to refund the PFC to

plaintiff when a ticketed passenger "does not fly on the ticketed or substituted AA flight, and the

ticket expires." Complaint, at 2, ¶ 3. Defendant argues that plaintiff's interpretation of this

regulation means that "any passenger failure to utilize a ticket constitutes an itinerary change

within the sense of the regulation." (Def. Mem. of Law, at 9). Defendant offers the Molar letter

as support for his understanding of 14 C.F.R. § 158.45. In the letter, Mr. Molar states:

> In the scenario of a nonrefundable expired ticket in which a passenger had not initiated an action which would require an adjustment to the amount of airfare paid by the passenger, the passenger would not be entitled to the refund of the PFC. In this case, if the PFC's had not been remitted to the collecting airport when the ticket expires, the PFC's should be remitted in accordance with the itinerary on the expired ticket.

(Goldstein Decl., Ex. 1). However, plaintiff has appended the Frietz Letter as support for her

position on the issue. The Frietz Letter states in relevant part:

> When a ticket purchaser does not use a ticket for air transportation and the ticket then expires or loses its value, the September 11th Security Fee involved is subject to a refund by the collecting carrier to the ticket purchaser. If such a ticket purchaser requests a refund of the September 11th Security Fee collected, the carrier must provide the requester with a full refund of the fee....TSA is considering promulgating further details concerning refunding September 11th Security Fees.... In any case, where an air carrier does not refund September 11th Security Fees to the ticket purchaser, the fees must be remitted to or remain with the TSA....

(Goldstein Decl., Ex. C). Plaintiff argues that the Frietz Letter supports her position that the

PSSF should be refunded by the air carrier when the ticket expires or loses its value. However,

as defendant points out, it is clear that Frietz's interpretation is not final authority on the matter.

Frietz concedes in his letter that "TSA is considering promulgating further details concerning

refunding September 11th Security Fees." (Goldstein Decl., Ex. C). Moreover, Frietz's

interpretation conflicts with the plain meaning of 49 U.S.C. § 44940(g). This statute

contemplates that refunds of the PSSFs, if any, are to be made by the Department of

Transportation, "a circumstance incompatible with the assumption that carriers must make

refunds." (Def. Mem. of Law, at 10). Additionally, the statute restricts refunds to situations

involving mistake or excessive payments, but does not contemplate unused expired tickets.

Regardless, what both the Frietz and Molar letters stand for is the proposition that the refund

11

issue does in fact involve the interpretation of unspecific and vague statutory language and that plaintiff's asserted right to relief involves the proper interpretation of these federal statutes and regulations. Vindication of plaintiff's state law claims therefore does "necessarily turn on some construction of federal law", as the relevant statutes discussed appear to be the only source of plaintiff's right to a refund. Therefore, the Court finds that federal question jurisdiction does exist for this purpose.

     *3.    Preemption*

     Plaintiff also relies upon <u>Kings Choice Neckwear, Inc. v. DHL Airways, Inc.</u>, No. 02 Civ. 9580, 2003 WL 22283814 (S.D.N.Y.) as precedent for remand of the instant case. (Pl. Mem. of Law, at 11-12). There, the recipients of international packages sought damages and injunctive relief for deceptive business practices, breach of contract, and unjust enrichment against air couriers for charging some recipients of dutiable parcels an undisclosed and unauthorized processing fee. <u>See generally</u> <u>id</u>. The defendants removed the case to federal court on the basis that the state law claims concerning the processing fees were preempted by the ADA. <u>Id</u>. The <u>Kings Choice</u> Court relied on <u>American Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 220 (1995) in holding that even if preemption by the ADA might be a defense to the state law claims, preemption alone was not "a basis for federal jurisdiction." <u>See also</u> Pl. Mem. of Law, at 12. However, the <u>Kings Choice</u> decision is distinguishable from the instant case. The <u>Kings Choice</u> Court remanded that case because it held that the ADA did not provide for *complete* preemption of state law claims. Here, defendant does not base removal on the doctrine of complete preemption, which provides for removal only under certain circumstances as when dealing with ERISA or the Labor Management Relations Act. <u>See</u> <u>Kings Choice</u>, 2003 WL 22283814 *3; <u>see</u>

also Def. Mem. of Law, at 12. Thus, while <u>Kings Choice</u> does support the proposition that the ADA does not *completely* preempt state law, it is largely irrelevant in this instance, since defendant here does not rely on complete preemption. <u>Kings Choice</u> does not discuss any of the grounds for removal which American Airlines raises in this case. Accordingly, while it is clear that the ADA has not completely preempted plaintiff's state law claims for purposes of removal, the preemption doctrine does provide a colorable federal defense, as discussed later in Section III(C)(2)(c) of this report and recommendation.

### 4. Judge Leonard's Decision in the Western District of Oklahoma

Both plaintiff and defendant cite a recent decision from the Western District of Oklahoma on a factually similar matter. There the Court ordered remand on three similar cases to Oklahoma state court.[5] In the Remand Order, the Court held that "removal is proper only if the Court finds that resolution of plaintiffs' claims turn on substantial questions of federal law *and* the applicable federal statutes give rise to a private cause of action." (Goldstein Decl. Ex. 3, at 5-6) (emphasis added). The Court then "assume[d] without deciding that analysis of plaintiffs' claims would require interpretation of these statutes [49 U.S.C. §§ 40117, 44940] and that this would present a substantial question of federal law." <u>Id</u>. at 7-8; <u>see also</u> Def. Mem. of Law, at 12. The Court then remanded however because the ADA provides no express or implied private right of action which the Tenth Circuit requires as a predicate for removal based on federal question. (Def. Mem. of Law, at 12).

Here, unlike the Tenth Circuit, the Second Circuit does not require the existence of a

---

[5] *Brown v. Delta Airlines, Inc.*, No. CIV-03-871-L; *Stem v. Continental Airlines, Inc.*, No. CIV-03-943-L; and *Stem v. Northwest Airlines, Inc.*, No. CIV-03-901-L.

private right of action as a prerequisite for removal of an action that presents a substantial federal

question. See West 14th Street, 815 F.2d at 196. If anything, such a private right of action, if it

exists as all, may be a factor favoring removal, but it is not required for removal. Id. at 196

(holding that a substantial federal question conferred jurisdiction even without a private right of

action). In fact, as this Circuit held in Platzer v. Sloan-Kettering Inst. for Cancer Research, "even

where no private right of action exists for the underlying federal issue, if the nature of the federal

issue is sufficiently substantial, subject matter jurisdiction may still exist. 787 F. Sup. 360, 366

(S.D.N.Y. 1992). Thus, I find that the standard of review used in the Oklahoma Remand Order

is inapplicable to the instant case.

## C.    Acting Under a Federal Officer

### 1. Standard

Defendant also seeks removal under 28 U.S.C. § 1442(a)(1).[6]  Section 1442(a)(1) permits

the "United States or any agency thereof or any officer (or any person acting under that officer)"

to remove a civil action brought against that person to district court "for any act under color of

---

[6]       28 U.S.C. § 1442(a)(1) states:

> (a) A civil action or criminal prosecution commenced in a State court against
> any of the following persons may be removed by them to the district court of
> the United States for the district and division embracing the place wherein it is
> pending:

>> (1) Any officer of the United States or any agency thereof, or person
>> acting under him, for any act under color of such office or on account
>> of any right, title or authority claimed under any Act of Congress for
>> the apprehension or punishment of criminals or the collection of
>> revenue.

28 U.S.C. § 1442(a)(1).

14

such office." 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) was adopted to "prevent state courts from interfering with the implementation of federal law." See Willingham v. Morgan, 395 U.S. 402, 446 (1969). The statute permits executive branch officials and a "person acting under him" to remove an action to federal court. Ryan v. Dow Chem. Co., 781 F. Supp. 934 (E.D.N.Y. 1992). Also, as the Court in Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y. held, in "addition to conferring a right of removal upon the defendant, this statute grants subject matter jurisdiction to the district court." 754 F.2d 49, 55 (2d Cir. 1985).

Here, defendant claims that it acted "merely as an agent of the Under Secretary of Transportation for Security for the purposes of collection and remittance of the PSSFs." (Notice of Remand, ¶ 7). Defendant essentially argues that it acted "under color of such office." In order to prove that a defendant did act "under color", the defendant must fulfill a three prong test.[7] See In re Methyl Tertiary Butyl Ether ("MBTE") Prod. Liab. Litig., No. M21-88, MDL No. 1358, 2004 WL 515535, at *6 (S.D.N.Y. Mar. 16, 2004). First, the defendant must show that he is a "person" within the meaning of the statute. See In re "Agent Orange" Prod. Liab. Litig., 304 F.

---

[7] The Court described the three-prong test a bit differently than Judge Weinstein did in the Agent Orange case; Judge Weinstein's test is used in the current analysis. However, the substance of the test is the same. The MBTE Court describes the test as follows:

> Under section 1442, a private party may remove a state court action if (1) it acted under the direction of a federal agency or officer; (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal direction and the conduct in question. See Jefferson County, 527 U.S. at 431, 119 S.Ct. 2069; Mesa, 489 U.S. at 124-25, 109 S.Ct. 959; In re Agent Orange Product Liab. Litig., 304 F.Supp.2d 442, 446-47 (E.D.N.Y.2004);16 James Wm. Moore et al., Moore's Federal Practice, ¶ 107.15[1][b][ii].

In re Methyl Tertiary Butyl Ether ("MBTE") Prod. Liab. Litig., No. M21-88, MDL No. 1358, 2004 WL 515535, at *6 (S.D.N.Y. Mar. 16, 2004).

Supp. 2d 442, 446 (E.D.N.Y. 2004). Second, defendant must prove "that the suit is for any act under color of [federal] office, 'i.e. there is a causal connection between the charged conduct and asserted official authority.'" Id. (citing Willingham v. Morgan, 395 U.S. 402, 409 (1969)). Finally, the defendant must raise a "colorable federal defense." Id.; see also Jefferson County, Ala. v. Acker, 527 U.S. 423, 431 (1999)(citing Willingham v. Morgan, 395 U.S. 402, 409 (1969)). However, defendant need not establish the merits of the case in order to prove the "under color" and "colorable defense" elements. Jefferson County, Ala. v. Acker, 527 U.S. 423, 432 (1999) ( The Court held, "[j]ust as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection.")(internal citations ommitted). In addition, Courts have construed Section 1442(a)(1) broadly, "to achieve the protective purpose of the statute", unless federalism concerns are raised. See In re "Agent Orange" Prod. Liab. Litig., 304 F. Supp. 2d 442 (E.D.N.Y. 2004); see also Willingham, 395 U.S. at 407, 89 S.Ct. 1813; see also 14C Wright & Miller, Federal Practice & Procedure: Jurisdiction 3d § 3727 (1998 & Supp. 2004) at 139, fn 15).

    2.    28 U.S.C. § 1442(a)(1)

a.    Definition of a Person

Defendant American Airlines is a corporation for all intents and purposes. 1 U.S.C. § 1 states that "unless the context indicates otherwise...the words 'person' and 'whoever' include corporations, companies..., and joint stock companies, as well as individuals..." 1 U.S.C. § 1. The Supreme Court has thus far not ruled on whether corporations are considered persons for purposes of the federal removal statute. See In re "Agent Orange" Prod. Liab. Litig., 304 F. Supp.

16

2d at 447. However, the Court in Int'l Primate Protection League v. Adm'r of Tulane Educ. Fund, 500 U.S. 72, 111 S. Ct. 1700, 114 L.Ed. 2d 134 (!991), did hold that a federal agency was not considered a "person" under the statute. In re "Agent Orange", 304 F. Supp. 2d at 447. In response to the Court's holding, Congress broadened the scope of the statute by amending it to allow removal by federal agencies. Id. Thus, as Judge Weinstein notes in In re "Agent Orange",

> "Congress's amendment of the statute to emphasize its broad scope supports the conclusion that 'person' encompasses more than mere individuals. Protection of federal government operations in today's organizational climate where so much of our economy and government outsourcing depends upon corporations requires this result.

Id. Therefore, as a corporation, defendant American Airlines satisfies the definition of a "person" under Section 1442(a)(1). See e.g., id; Winters v. Diamond Shamrock Chemical Co., 149 F 3d 387 (5th Cir. 1998); Thompson v. Comm. Ins. Co., 1999 U.S. Dist. LEXIS 21725 (S.D. Ohio 1999); Arness v. Boeing N. Am. Inc., 997 F. Supp. 1268, 1272 (C.D. Cal. 1998).

b. Acted "under color" of Federal Office and Causal Connection

Plaintiff argues that the standard used for proving causal connection requires a showing of "a substantial degree of direct and detailed federal control over defendant's work." (Pl. Mem. of Law, at 15). Plaintiff cites numerous federal cases, including In re "Agent Orange where the Court held that,

> The "color of office" element of the federal officer removal statute requires a causal nexus between the defendant's actions under federal office and a plaintiff's state court claims; a substantial degree of direct and detailed federal control over the defendant's work is required.

Id. at 447; see also Winters v. Diamond Shamrock Chem. Co., 149 F. 3d at 398 (where the Court permitted removal because the government maintained strict control over the development and

production of Agent Orange); see also Arness v. Boeing N. Am., Inc. 997 F. Supp at 1273 (where the Court denied removal because the requisite for intimate government oversight was absent).

However, plaintiff's cases deal primarily with toxic tort issues, where the defendants were sued for using dangerous substances pursuant to federal regulations, resulting in injuries to plaintiffs.  Here, we are not dealing with a toxic tort case or even a personal injury case but an alleged breach of contract.  Outside of the toxic tort context, Courts have found "no precise standard for the extent of control necessary to bring an individual with[in] the 'acting under' clause." Gurda Farms, Inc. v. Monroe County Legal Assistance Corp., 358 F. Supp. 841, 844 (S.D.N.Y. 1973)(holding that "The number and complexity of federal institutions and programs would render impossible the formulation of such a standard. What it comes down to is that the court in each case must ascertain to what extent defendants act under federal direction and to what extent as independent agents."); see also Group Health Inc. v. Blue Cross Assoc., 587 F. Supp. 887, 891 (S.D.N.Y. 1984)(denying motion to remand because defendant intermediary acted as an agent of the Secretary of Health and Human Service).

Additionally, here defendant has no legal or equitable interest in the fees collected.  See 49 U.S.C. § 40117(g)(4); see also 49 C.F.R. § 1510.11(b).  Instead, defendant is required by federal statute to collect the fees on behalf of a federal agency.  See, e.g., 14 C.F.R. §§ 158.49, 158.65; 49 C.F.R. §§ 150.15, 150.17.  The federal government also imposes the fees and determines the amount of the fees and for what services the fees will be used.[8]  See 49 U.S.C. §

---

[8] Section 44940(a) states:

> (a) General Authority.—
>> (1) Passenger fees.— *The Under Secretary of Transportation for Security shall impose a uniform fee*, on passengers of air carriers and foreign air

44940(a). Additionally, the defendant is required by federal statute to keep detailed records of all

fees collected, remitted or refunded and submit these records to the relevant agencies

periodically. Id. Finally, the federal government has the right to audit these records at any time.

See 14 C.F.R. § 258.69; 49 C.F.R. 1510.17. It is clear that the government has sufficiently

intertwined itself with the defendant by imposing such detailed mandates upon the defendant. In

effect the airlines are simply holding the Surcharges in trust for the federal agency since they

"must forward them monthly, and are under no clear mandate to refund them when a passenger

lets her ticket expire unused..." (Def. Mem. of Law, at 16). Additionally, it is apparent that the

---

carriers in air transportation and intrastate air transportation originating at airports in the United States, to pay for the following costs of providing civil aviation security services:

> (A) Salary, benefits, overtime, retirement and other costs of screening personnel, their supervisors and managers, and Federal law enforcement personnel deployed at airport security screening locations under section 44901.

> (B) The costs of training personnel described in subparagraph (A), and the acquisition, operation, and maintenance of equipment used by such personnel.

> (C) The costs of performing background investigations of personnel described in subparagraphs (A), (D), (F), and (G).

> (D) The costs of the Federal air marshals program.

> (E) The costs of performing civil aviation security research and development under this title.

> (F) The costs of Federal Security Managers under section 44903.

> (G) The costs of deploying Federal law enforcement personnel pursuant to section 44903 (h).

The amount of such costs *shall be determined by the Under Secretary* and shall not be subject to judicial review.

49 U.S.C. § 44940(a) (emphasis added).

defendant is acting as an agent or at the least an intermediary of the federal agency for passengers situated throughout the nation. Finally, there is indeed a great desire for uniformity here and the federal government's intimate involvement in the mandate of the Surcharges is evidence of that desire for uniformity. For these reasons, I find that defendant is acting "under color" and that there is a sufficient "causal connection between the charged conduct and asserted official authority."

c.    Colorable Federal Defense

The third requirement is that petitioner must have a colorable federal defense. This element is also broadly construed by the courts. See MTBE, 2004 WL 515535, at *7; see also Jefferson County, 527 U.S. at 431, 119 S.Ct. 2069 (The Court quoting Willingham 395 U.S. at 407, 89 S.Ct. 1813 held, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. We therefore do not require the officer virtually to 'win his case' before he can have it removed'"); see also Reiser vs. Fitzmaurice, No. 94 Civ. 7512, 1996 WL 54326, at *3 (S.D.N.Y. 1996) (stating "at the removal stage, it is not the Court's role to assess the validity of a particular defense. The Supreme Court made it clear in Willingham that the phrase 'under color...office' allows removal even if on the record then existing, it could not be said that 'the officers had a clearly sustainable defense.'").

Here, defendant argues it has the colorable federal defense of preemption and that "American simply handles the fees exactly as federal law requires." See Def. Mem. of Law, at 17. The ADA prohibits states from enacting or enforcing laws relating to air carrier "rates, routes, or services." 49 U.S.C. 1305(a)(1). The Supreme Court has held that "the ADA's preemption prescription bars state-impaired regulations of air carriers, but allows room for court

20

enforcement of contract terms set by the parties themselves." American Airlines, Inc. v. Wolens, 513 U.S. at 222. Plaintiff argues that the challenged conduct here does not support the defense of preemption because: "(a) plaintiff's claims are not related to AA's rates, routes, or services, and (b) the claim concerns contract terms set by AA and the putative class members." (Pl. Mem. of Law, at 18-19). First, plaintiff argues that the Surcharges are not part of AA's rates. Id. This issue is not contested by defendants.[9] However, the Court disagrees with plaintiff's second argument. The Surcharges are not contract terms set by defendant and the putative class. Instead, the Surcharges are fees defendant is required to collect by the federal government. The defendant has no choice "whether to collect SSFs and PFCs or not, how much to charge, or when to remit them to the government." Def. Mem. of Law, at 18; see also 49 U.S.C. § 44940(a). Therefore, the Court finds that defendant does have a colorable federal defense and satisfies the relatively broad standard in finding so.

## D.      Costs and Fees

The Court denies plaintiff's request for costs and fees associated with bringing this Motion. 28 U.S.C. § 1447(c) provides that a the Court "may require payments of just costs and any actual expenses, including attorneys fees, incurred as a result" of remand to state court. 28 U.S.C. § 1447(c). Here, the Court has found that defendant satisfies the burdens of federal

---

[9] Order 5500.1 at 90 states in relevant part:

> 6-12 Information Required on Tickets. Issuing carriers and their agents shall note as a separate item on each air travel coupon, or equivalent record for which a PFC is collected, the total amount of PFC's paid by the passenger and the airports for which the PFC's are collected.

Complaint, ¶ 18 and Ex. A.

question jurisdiction and Section 1442(a)(1) and thus the suit should be properly removed to federal court. Also, the Court does find that there was a "colorable basis" for removal and that defendant's request for removal was neither frivolous or in bad faith. See e.g., Frontier Ins. Co. v. MTN Owner Trust, 111 F. Supp. 2d 376, 381 (S.D.N.Y. 2000). For these reasons, the Court denies plaintiff's request for costs and fees.

## IV.    Conclusion

For the foregoing reasons, I respectfully recommend that plaintiff's Motion to Remand be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: Brooklyn, New York
May 13, 2005

JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE